686 So.2d 368 (1996)
Ex parte Ronald Eric OSWALT.
In re Ronald Eric Oswalt, Alias
v.
State.
1950203.
Supreme Court of Alabama.
May 24, 1996.
*369 Joseph G. Pierce of Drake & Pierce, Tuscaloosa, for petitioner.
Jeff Sessions, Atty. Gen., and Jean A. Therkelsen, Asst. Atty. Gen., for respondent.
PER CURIAM.
We granted Ronald Eric Oswalt's petition for a writ of certiorari to the Court of Criminal Appeals to determine whether that court erred by affirming the trial court's denial of Oswalt's motion to suppress evidence seized when police officers executed an "anticipatory search warrant" for his residence. Based on the evidence seized in the search, Oswalt was found guilty of trafficking in cocaine.
The Court of Criminal Appeals affirmed the conviction, holding that anticipatory search warrants do not violate the protections against unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution and the Alabama Constitution of 1901, Art. I, § 5. It also held that such warrants are valid under Alabama law controlling the issuance of search warrants. Oswalt v. State, 686 So.2d 361 (Ala.Crim.App.1994). Although we recognize, along with an overwhelming number of jurisdictions,[1] that an anticipatory search *370 warrant is not per se unconstitutional,[2] we hold that the specific anticipatory search warrant at issue in this case was not authorized by existing Alabama law.

I.
An informant told Officer Norman Willingham, of the narcotics division of the Alabama Department of Public Safety, that Oswalt was involved in the distribution of illegal drugs and that Oswalt wished to purchase cocaine and marijuana. Willingham had the informant tell Oswalt that he knew someone who could sell Oswalt those drugs. In response, the informant told Willingham that Oswalt wanted to purchase one ounce of cocaine and wanted it delivered to him at his residence in Northport on August 1, 1992.
On the morning of August 1, Willingham obtained a search warrant from Magistrate Gene Boswell, based on his affidavit stating that later that same day an undercover narcotics agent, Paul Johnson, would travel to Oswalt's residence and sell Oswalt an ounce of cocaine, which would then be in Oswalt's possession in his residence. It is uncontested that when Willingham obtained the search warrant, there was no probable cause to believe that Oswalt already had possession of the cocaine that was ultimately seized from his residence, or that he had possession of other controlled substances. Later that day, Johnson was accompanied by the informant to Oswalt's residence, the drug transaction occurred as planned, and the search warrant was executed. The search yielded the 28 grams of cocaine that Agent Johnson had just delivered and sold to Oswalt.
Oswalt was indicted for trafficking in cocaine, in violation of Ala.Code 1975, § 13A-12-231(2)a. He pleaded not guilty and moved to suppress the evidence obtained by the search of his residence, contending that the search warrant was invalid. The trial court denied the motion and, after the case was submitted to the trial judge on stipulated facts, Oswalt was convicted. He was sentenced to three years in prison, with five years' probation upon release. As noted above, the Court of Criminal Appeals affirmed Oswalt's conviction. Oswalt, supra. We granted certiorari review to consider whether the anticipatory search warrant at issue in this case is valid under Alabama law.

II.
Both Ala.Code 1975, § 15-5-2, and Rule 3.8, Ala.R.Crim.P., address the issuance of search warrants. The requirements of the procedural rule and the statute are virtually identical; however, unless otherwise provided by law, Rule 3.8 supersedes § 15-5-2.[3] Although a legislative act generally controls over a court rule, Section 6.11 of Amendment 328 of the Alabama Constitution of 1901 confers on this Court the authority to "make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts," subject to the rules being changed by the legislature only "by a general act of statewide application." See, also, Ex parte Foshee, 246 Ala. 604, 21 So.2d 827 (1945); Holsemback v. State, 443 So.2d 1371 (Ala.Crim.App.1983); Committee Comments to Rule 1.1, Ala.R.Crim.P. The Alabama legislature has recognized the supremacy of this Court's Rules of Criminal *371 Procedure over statutory provisions on the same subject, stating in § 15-1-1, Ala.Code 1975: "Any provision of this title [`Criminal Procedure'] regulating procedure shall apply only if the procedural subject matter is not governed by rules of practice and procedure adopted by the Supreme Court of Alabama."
Thus, in order to determine whether a search warrant is authorized under Alabama law, we look to the specific language of Rule 3.8. The Rule reads:
"A search warrant authorized by this rule may be issued if there is probable cause to believe the property sought:
"(1) Was unlawfully obtained;
"(2) Was used as the means of committing or attempting to commit any offense under the laws of the State of Alabama or any political subdivision thereof;
"(3) Is in the possession of any person with intent to use it as a means of committing a criminal offense, or is in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery; or
"(4) Constitutes evidence of a criminal offense under the laws of the State of Alabama or any political subdivision thereof."
(Emphasis added.)
The search warrant was obtained on the morning of August 1, 1992. The affidavit supporting the warrant, which is also dated August 1, 1992, stated, in pertinent part:
"My name is N.E. Willingham, I am a law officer with the following law enforcement agency: Alabama Department of Public Safety, Narcotics Division.
". . . .
"FURTHER, YOUR AFFIANT IS CONDUCTING AN INVESTIGATION IN TUSCALOOSA COUNTY, ALABAMA, FOCUSING ON RONALD ERIC OSWALT ... WHO RESIDES AT THE PREMISES KNOWN AS 1801 HARPER ROAD, LOT 6, QUAIL RIDGE TRAILER PARK, NORTHPORT, ALABAMA. YOUR AFFIANT HAS RECEIVED INFORMATION FROM A COOPERATING INDIVIDUAL WHO HAS IDENTIFIED OSWALT AS BEING A PERSON INVOLVED IN THE DISTRIBUTION OF [A] CONTROLLED SUBSTANCE.
"ON TUESDAY, 07-28-92, THE COOPERATING INDIVIDUAL STATED TO YOUR AFFIANT THAT HE HAD HAD A CONVERSATION WITH OSWALT, IN WHICH OSWALT STATED THAT HE WAS LOOKING TO PURCHASE A QUANTITY OF COCAINE AND MARIJUANA.
"AT THE DIRECTION OF THE AFFIANT, THE COOPERATING INDIVIDUAL MET WITH OSWALT ON WEDNESDAY, 07-29-92. AT THAT TIME THE COOPERATING INDIVIDUAL TOLD OSWALT THAT HE KNEW SOMEONE WHO HAD COCAINE AND MARIJUANA TO SELL. THE COOPERATING INDIVIDUAL TOLD OSWALT THAT THE COCAINE SOLD FOR $1,100 [AN] OUNCE AND THAT THE MARIJUANA SOLD FOR $1,400 A POUND.
"ON THURSDAY, 07-30-92, THE COOPERATING INDIVIDUAL STATED THAT OSWALT TOLD HIM THAT HE WANTED TO PURCHASE AN OUNCE OF COCAINE. OSWALT REQUESTED THAT THE TRANSACTION TAKE PLACE AROUND 10:00 A.M. ON SATURDAY, 08-01-92, AT OSWALT'S RESIDENCE IN NORTHPORT, ALABAMA.
"ON SATURDAY, 08-01-92, ALABAMA DEPARTMENT OF [PUBLIC] SAFETY NARCOTIC AGENT PAUL JOHNSON WILL BE WORKING IN [AN] UNDERCOVER CAPACITY POSING AS A DRUG DEALER. AGENT JOHNSON WILL HAVE A QUANTITY OF COCAINE IN HIS POSSESSION AND WILL TRAVEL TO THE RESIDENCE OF RONALD ERIC OSWALT IN NORTHPORT, ALABAMA. AGENT JOHNSON WILL HAVE A CONVERSATION WITH OSWALT CONCERNING OSWALT'S DESIRE TO PURCHASE A QUANTITY OF COCAINE. AGENT JOHNSON WILL CONDUCT A COCAINE TRANSACTION WITH OSWALT.
"AGENT JOHNSON WILL HAVE ON HIS PERSON AN ELECTRONIC *372 TRANSMITTER TO ALLOW THE MONITORING OF CONVERSATION. UPON COMPLETION OF THE COCAINE TRANSACTION AGENTS ON SURVEILLANCE WILL GO TO THE RESIDENCE OF OSWALT AND CONDUCT A SEARCH OF OSWALT AND HIS PREMISES FOR THE COCAINE AND EVIDENCE OF DRUG DISTRIBUTION.
"Your affiant shows that based on the above and foregoing facts and information, he has probable cause to believe that the aforesaid property is concealed upon the aforesaid persons, property and/or vehicles and is subject to seizure and makes this affidavit so that a warrant may issue to search the aforesaid persons, property, and/or vehicles."
(Emphasis added.) Although the affidavit concludes by asserting that the affiant "has probable cause to believe that the [cocaine] is concealed upon the aforesaid ... property," it states that the probable cause is based on events that would occur in the future, i.e., "Agent Johnson will have a conversation with Oswalt," and "Agent Johnson will conduct a cocaine transaction with Oswalt."
In general, a search warrant based upon "an affidavit showing probable cause that at some future time (but not presently) certain evidence of a crime will be located at a specific place" is referred to as an anticipatory search warrant. 2 W. LaFave, Search and Seizure § 3.7(c) (2d ed. 1987). In other words, an anticipatory search warrant anticipates that certain specific events will occur after the issuance of the warrant, those future events creating the probable cause that supports the warrant.[4] If the future events do not occur, the warrant is void. United States v. Garcia, 882 F.2d 699 (2d Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

III.
Oswalt argues that the Court of Criminal Appeals erred by ruling that anticipatory search warrants are valid in Alabama. He contends that such warrants are not allowed under the language of Rule 3.8 because, he says, that rule requires probable cause to believe that a violation of the law has occurred or is occurring at the time the warrant issues, not that one will occur in the future. Oswalt contends that the Court of Criminal Appeals ignored its own holding in Walls v. State, 536 So.2d 137 (Ala.Crim.App. 1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989), where, he says, that court held that both the issuance and the execution of search warrants must strictly comply with legal requirements. Oswalt says that in his case the court merely concluded, without any supporting legal analysis, that anticipatory search warrants are valid under Alabama law.
In response, the State first argues that anticipatory search warrants are valid because, it says, they are not expressly prohibited by Alabama law. It also suggests that this Court should follow the trend of federal courts, which have held such warrants valid under the Federal Rules of Criminal Procedure. Finally, the State argues that should this Court rule that the search warrant for Oswalt's residence was invalid, we should hold that there was sufficient probable cause, based on exigent circumstances, to justify a warrantless search.

IV.
The State's brief focuses on the issue whether anticipatory search warrants are constitutional. As we noted above, such warrants *373 are not per se unconstitutional. However, the threshold question in this case is whether the specific anticipatory search warrant at issue in this case was authorized by Rule 3.8. Specifically, we must determine whether the use of present- and past-tense language in Rule 3.8, e.g., "[w]as unlawfully obtained," "[w]as used as the means," "[i]s in the possession," and "[c]onstitutes evidence of a criminal offense," required that there be probable cause to believe that the cocaine was located at Oswalt's premises at the time the warrant was issued, or whether the expectation that the cocaine would be there at the time of the future search would suffice.

A.
Although the Rules of Criminal Procedure are to be liberally construed by this Court to "secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense" in criminal proceedings, Rule 1.2, Ala.R.Crim.P., we find no indication of an intent when Rule 3.8 was adopted to expand the grounds for granting a search warrant beyond those that were provided for in § 15-5-2 and its ancient predecessors. Thus, we look to § 15-5-2, which states:
"A search warrant may be issued on any one of the following grounds:
"(1) Where the property was stolen or embezzled;
"(2) Where it was used as the means of committing a felony; or
"(3) Where it is in the possession of any person with the intent to use it as a means of committing a public offense or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery."
Even though rules of statutory interpretation are not necessarily applicable to this Court's procedural rules, in this case we have looked to certain basic rules of statutory construction for the limited purpose of determining the meaning of § 15-5-2. First, where the language of a statute is clear it is the duty of this Court to give effect to the intent expressed by that language. Parker v. Hilliard, 567 So.2d 1343 (Ala.1990); Ex parte Rodgers, 554 So.2d 1120 (Ala.1989). Second, we note the legal maxim expresio unius est exclusio alteriusthe expression of one thing implies an intent to exclude another not so expressed. Jefferson County v. Alabama Crim. Justice Info. Ctr. Comm'n, 620 So.2d 651 (Ala.1993); Geohagan v. General Motors Corp., 291 Ala. 167, 279 So.2d 436 (1973).
Given these guiding concepts, we conclude that the plain and unambiguous language of § 15-5-2 would not provide for the anticipatory search warrant at issue in this case. The plain language of subsections (1) and (2) of § 15-5-2, which are echoed by subsections (1) and (2) of Rule 3.8, require that the evidence to be seized be evidence of a criminal offense that has already occurred. Although subsection (3) of § 15-5-2, which is mimicked by subsection (3) of Rule 3.8, requires only the intent to commit a criminal offense rather than the actual commission of a crime, it requires that the evidence be presently in the possession of the person whose premises are to be searched. Thus, we conclude that when the legislature enacted § 15-5-2, and when much of the language of that statute was adopted by this Court into one of the Rules of Criminal Procedure, without any expression of a differing, more expansive intent, there was no intent to allow the issuance of a search warrant where, as in this case, the crime to which the evidence at issue relates has not yet occurred and the evidence to be seized is not presently in the possession of the person whose premises are to be searched.
Even though the Rules of Criminal Procedure are "intended to provide for the just and speedy determination of every criminal proceeding," Rule 1.2, Ala.R.Crim.P., that charge alone does not lead us to so expand the meaning of the clear language of Rule 3.8 so as to allow for the anticipatory search warrant at issue. That is our conclusion, notwithstanding the fact that Rule 3.8 added subsection (4), which has no equivalent in § 15-5-2. Like subsections (1) and (2) of Rule 3.8, subsection (4) also requires that the criminal offense have been committed before the search warrant may be issued. In this case, the crime, Oswalt's purchase and possession *374 of a large volume of a controlled substance, had not yet occurred and the evidence, the cocaine, was not in his possession at the time the search warrant was issued. Accordingly, the requirements of Rule 3.8 had not been met when the search warrant was issued, and the warrant was not valid under Alabama law.[5]
Thus, although anticipatory search warrants may be constitutional, those which fail to comply with the requirements adopted by this Court in Rule 3.8 are currently impermissible in Alabama. However, because we believe it would be in the best interest of the citizens of this State, we recommend that the Criminal Rules Advisory Committee redraft Rule 3.8 to permit the broader issuance of anticipatory search warrants than the Rule currently allows.

B.
In addition to the plain and unambiguous language of Rule 3.8, we also take note of a recent amendment to Rule 41, Fed.R.Crim.P. The 1990 advisory committee note for Federal Rule 41(a) explains the purpose of the amendment:
"Rule 41(a)(1) permits anticipatory warrants by omitting the words `is located,' which in the past required that in all instances the object of the search had to be located within the district at the time the warrant was issued. Now a search for property or a person within the district, or expected to be within the district, is valid if it otherwise complies with the rule."
(Emphasis added.) The language "is located" was deleted from Federal Rule 41(a)(1) because the language was viewed as requiring probable cause to believe the property or person was located at the place to be searched at the time of the issuance of the search warrant. Thus, Federal Rule 41(a)(1) was amended to specifically allow for anticipatory search warrants, by deleting present-tense language, such as that currently appearing in Rule 3.8, Ala.R.Crim.P. The fact that Rule 41(a)(1) was amended as it was supports our holding in this case.

V.
Accordingly, we hold that the anticipatory search warrant issued for Oswalt's premises violated Rule 3.8 and, thus, was void. The State has suggested that if this Court holds the warrant void, then it should hold that under the facts of this case the State made a sufficient showing of exigent circumstances to support a warrantless search of Oswalt's residence. However, that is an issue the trial court should decide initially. The judgment of the Court of Criminal Appeals affirming Oswalt's conviction, based on that court's ruling that all anticipatory search warrants are valid under Alabama law, is reversed, and this cause is remanded with instructions for the Court of Criminal Appeals to remand it to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
ALMON, J., concurs in the result.
MADDOX and HOUSTON, JJ., dissent.
MADDOX, Justice (dissenting).
This case involves the validity of a so-called anticipatory search warrant. The Court of Criminal Appeals, with a well-written opinion by Judge John Patterson, concluded that neither Alabama law nor Federal law prohibits the issuance of anticipatory search warrants, and affirmed this defendant's conviction. Oswalt v. State, 686 So.2d 361 (Ala.Crim.App.1994). Judge Patterson reviewed the applicable law, finding "no requirement that possession be present or contemporaneous with the issuance of [a] *375 warrant in this state and ... no provision, statute, or rule that prohibits the issuance of a warrant to search at a time in the near future for contraband [that] is anticipated will be at the place of the search at that time." 686 So.2d at 366. I believe Judge Patterson was imminently correct.
In ascertaining the intent of this Court when it adopted Rule 3.8, Ala.R.Crim.P.,[6] the majority applies a "library analysis"an analysis condemned in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)and reverses the judgment of the Court of Criminal Appeals, even though the majority recognizes, "along with an overwhelming number of jurisdictions, that an anticipatory search warrant is not per se unconstitutional." 686 So.2d at 369.
Having thoroughly reviewed the law of Alabama relating to the existence of probable cause to validate a search, I am compelled to disagree with the majority's reasoning and holding, and, instead, to agree completely with the statement of the Court of Criminal Appeals that "[n]umerous courts, both state and federal, have upheld the validity of anticipatory search warrants under governing search warrant provisions and factual circumstances similar to those in the present case." Oswalt v. State, 686 So.2d at 366.
The reasons I believe the majority has incorrectly construed Rule 3.8 are as follows: (1) In ascertaining the intent of this Court in adopting Rule 3.8, the majority applies rules of construction applicable to legislative acts, citing the provisions of Rule 1.2 that govern how the Rules are to be construed, and concludes that "Rule 3.8 simply reflects law that has remained virtually unchanged for more than 140 years." 686 So.2d at 370 (n. 3). (2) In holding this "anticipatory search warrant" invalid, the majority essentially applies the exclusionary rule. This rule was first enunciated in Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914), which was held to be binding on the states in Mapp v. Ohio, 367 U.S. 643, 654-55, 81 S.Ct. 1684, 1691-92, 6 L.Ed.2d 1081 (1961). However, the majority fails to recognize that the exclusionary rule had been substantially modified by the time this Court adopted Rule 3.8, by United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It should be noted that the framers of the Rules were aware of the decision of the United States Supreme Court in Illinois v. Gates, because the Committee Comments to Rule 3.6 cite that case. The Rule 3.6 Comments state that the "[r]equirements of ... Illinois v. Gates ... are also included in the rules." In my opinion, this Court, in adopting Rule 3.8 did not intend that it would be used to exclude evidence of the commission of a crime and certainly did not intend that a "library analysis" be applied to its interpretation. See, Illinois v. Gates, where the Court condemned the use of "library analysis" in probable cause determinations.
In this case, the police go to a magistrate, they tell the magistrate what they propose to do, they conduct themselves just as they told the magistrate they would. The crime is committed, and they make the seizure and the arrest. What is unreasonable about that?

I.
Rule 1.2, Ala.R.Crim.P., states:
"These rules are intended to provide for the just and speedy determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense, and to protect the rights of the individual while preserving the public welfare."
Applying this rule of construction to the provisions of Rule 3.8, I can only conclude, as the Court of Criminal Appeals did, that the search in this case did not offend either the State or the Federal Constitution. Both Constitutions, of course, protect an individual against unreasonable searches and seizures, and Rule 3.8 likewise should be construed to protect this important constitutional right. *376 On the other hand, Rule 1.2 further stipulates that the public welfare must be preserved. The majority concedes that "it would be in the best interest of the citizens of this State ... that the Criminal Rules Advisory Committee redraft Rule 3.8 to permit the broader issuance of anticipatory search warrants than the Rule currently allows," 686 So.2d at 374 (emphasis omitted), even though Rule 1.2 already provides, in part, that the public welfare must be protected.

II.
"An anticipatory warrant, by definition, is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." United States v. Garcia, 882 F.2d 699, 702 (2d Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).
The defendant's main argument in challenging the validity of the warrant is that there was no present probable cause at the time the warrant was issued. The majority accepts this argument in holding this particular warrant invalid, even though the officers went before a neutral magistrate and obtained a warrant, based upon a probable cause determination made by the issuing magistrate. In accepting the defendant's argument that the "anticipatory search warrant" in this case is invalid, the majority fails to recognize that at the time of the adoption of Rule 3.8, the Supreme Court of the United States, in Illinois v. Gates and United States v. Leon, had substantially modified the holdings in Weeks v. United States and Mapp v. Ohio, the cases in which the exclusionary rule was first enunciated and then was held to be binding on the states. In fact, the Committee Comments to Rule 3.6 state: "Requirements of such United States Supreme Court cases as Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), are also included in the rules."
Although I recognize that neither this Court nor the United States Supreme Court has previously addressed the constitutionality of anticipatory search warrants, many other courts, both state and federal, have addressed the issue, and several law review articles have addressed that issue. Flannery, Abridged Too Far: Anticipatory Search Warrants And The Fourth Amendment, 32 Wm. & Mary L.Rev. 781) (1991); Mitchell, Note, Anticipatory Search Warrants: The Supreme Court's Opportunity to Reexamine the Framework of the Fourth Amendment, 44 Vand.L.Rev. 1387 (1991); James W. Hryekewicz, The Anticipatory Search Warrant in Texas, 44 Baylor L.Rev. 205 (1992).
In United States v. Garcia, supra, the Court of Appeals for the Second Circuit approved the use of an anticipatory search warrant and set out a model for the use of such a warrant. The court upheld the use of an anticipatory search warrant in connection with a controlled delivery of cocaine by an informant. The court explained that anticipatory warrants are based on probable cause, which exists for a future search only if there is independent evidence that a delivery of the contraband will occur before the search. The court said that the fact that the contraband is not presently located on the premises to be searched is immaterial, provided that at the time the warrant is issued probable cause exists to believe that the contraband will be there when the warrant is executed. The Garcia court further stated that although anticipatory search warrants, by definition, are issued before the events necessary to trigger a search have transpired, such warrants do not lack probable cause. The court focused on the existence of probable cause at the moment of the execution of the warrant, rather than at the time of the issuance of the warrant.
Pursuing this rationale, the Court of Appeals for the Second Circuit held that probable cause would be present at the time of the search if: (1) "a government official presents independent evidence" indicating a "sure course" of delivery; and (2) "the magistrate conditions the warrant on [the occurrence of] that delivery." 882 F.2d at 702. Both of those requirements were met in Oswalt's case.
In clarifying the nature of these restrictions, the Second Circuit Court of Appeals established that independent evidence must *377 be presented to the magistrate indicating that the contraband will be located at the premises when the search warrant is executed and that the affidavit must show: (1) "that the agent believes a delivery" will occur; (2) "how [the agent] obtained this belief"; (3) the reliability of the agent's sources; and (4) "what part government agents will play in the delivery." 882 F.2d at 703. Additionally, that court stated that the issuing judge or magistrate should condition the anticipatory warrant explicitly on a stated occurrence, so as to prevent both "premature execution" and "manipulation by government agents." 882 F.2d at 703-04. Moreover, the Garcia court did recognize that the issuing magistrate should strictly observe the particularity requirement of the Fourth Amendment in order to limit governmental abuse of anticipatory warrants. The Second Circuit, in making its analysis of the constitutionality of such a warrant, drew an analogy to a typical search warrant situation and concluded that "the purposes of the [F]ourth [A]mendment are best served by permitting government agents to obtain warrants in advance if they can show probable cause to believe that the contraband will be located on the premises at the time that search takes place." Garcia, 882 F.2d at 703. That court thus recognized that anticipatory search warrants afford more constitutional protections by encouraging police and other government officials to obtain judicial approval before conducting a search.

Conclusion
In my opinion, the Garcia court made an excellent analysis of the propriety of an anticipatory search warrant when all the requirements for its issuance are met. Consistent with that court's reasoning, I would construe the provisions of Rule 3.8 to permit the issuance of an anticipatory search warrant.
Additionally, based upon the method of interpretation required by the provisions of Rule 1.2, I conclude that it would be in the best interest of the public welfare to hold that this Court, by the adoption of Rule 3.8, has already validated the use of anticipatory search warrants and that it need not refer the matter to a committee. It appears to me that this Court, in adopting Rule 3.8, was attempting only to protect a defendant's constitutional right against an unreasonable search, and it appears to me that the use of the anticipatory search warrant in this case did not infringe on that protected right. It just seems a little incongruous to me to say that the evidence regarding the drugs seized in this case must be suppressed, based on what I consider a technical and overly strict reading of the provisions of Rule 3.8. In fact, Illinois v. Gates counselled against using such a "library analysis," and that case is cited in the Committee Comments to Rule 3.6.
Although I recognize that some legal scholars disagree with the use of anticipatory search warrants and that there were dissenting views expressed in Illinois v. Gates, there can be little doubt that when this Court adopted Rule 3.8 the law relating to searches and seizures had been modified from what it had been before. Therefore, I believe the Court of Criminal Appeals correctly held that the search and seizure in this case were not "unreasonable."
HOUSTON, J., concurs.
NOTES
[1] United States v. Wylie, 919 F.2d 969 (5th Cir. 1990); United States v. Garcia, 882 F.2d 699 (2d Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); United States v. Dornhofer, 859 F.2d 1195 (4th Cir.1988), cert. denied, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); United States v. Hale, 784 F.2d 1465 (9th Cir.), cert. denied, 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986); United States v. Lowe, 575 F.2d 1193 (6th Cir.), cert. denied, 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); United States v. Outland, 476 F.2d 581 (6th Cir.1973); United States ex rel. Beal v. Skaff, 418 F.2d 430 (7th Cir.1969); Johnson v. State, 617 P.2d 1117 (Alaska 1980); State v. Cox, 110 Ariz. 603, 522 P.2d 29 (1974); People v. Sousa, 18 Cal.App.4th 549, 22 Cal.Rptr.2d 264 (1993); Bernie v. State, 524 So.2d 988 (Fla.1988); Danford v. State, 133 Ga.App. 890, 212 S.E.2d 501 (1975); People v. Brake, 208 Mich.App. 233, 527 N.W.2d 56 (1994); State v. Morrison, 243 Neb. 469, 500 N.W.2d 547 (1993); State v. Canelo, 139 N.H. 376, 653 A.2d 1097 (1995); State v. Ulrich, 265 N.J.Super. 569, 628 A.2d 368 (1993); State v. Folk, 74 Ohio App.3d 468, 599 N.E.2d 334 (1991); Commonwealth v. Reviera, 387 Pa.Super. 196, 563 A.2d 1252 (1989), appeal granted, 525 Pa. 598, 575 A.2d 564 (1990), appeal dismissed, 526 Pa. 41, 584 A.2d 308 (1991); State v. Engel, 465 N.W.2d 787 (S.D.1991); McNeill v. Commonwealth, 10 Va.App. 674, 395 S.E.2d 460 (1990); State v. Falbo, 190 Wis.2d 328, 526 N.W.2d 814 (1994), review denied, 531 N.W.2d 327 (Wis.1995).
[2] The key element to the constitutionality of such warrants is a sufficient degree of judicial control over the circumstances under which the warrant is to be executed. Courts have stated that an anticipatory search warrant will be found unconstitutional if the conditions upon which the warrant is to become effective are not explicit, clear, and narrowly drawn. See State v. Lee, 93 Md. App. 408, 613 A.2d 395 (1992); and People v. Brake, State v. Ulrich, and Commonwealth v. Reviera, all cited in n. 1.
[3] The Alabama Rules of Criminal Procedure became effective on January 1, 1991, to bring uniformity to the practice and procedure of criminal proceedings. The Committee Comments to Rule 3.8 and the Code Commissioner's note to § 15-5-2 both state that Rule 3.8 supersedes § 15-5-2. However, the fact that Rule 3.8 superseded § 15-5-2 does not mean there was a change in the law regarding the issuance of search warrants, which is at issue in this case. Further, § 15-5-2 is only a recodification of the historic requirements for issuance of a search warrant in Alabama. See Ala.Code 1940, T. 15 § 101; Ala.Code 1923, § 5472; Ala.Code 1907, § 7758; Ala.Code 1897, § 5485; Ala.Code 1886, § 4728; Ala.Code 1876, § 4006; Ala.Code 1867, § 4377; Ala.Code 1852, § 3775. Thus, in regard to Alabama law regarding issuance of search warrants, Rule 3.8 simply reflects law that has remained virtually unchanged for more than 140 years.
[4] A common factual setting in which other jurisdictions have authorized the issuance of an anticipatory search warrant is where a law enforcement officer presents evidence showing that the contraband to be seized is on a "sure course" to the premises to be searched and that there is a substantial probability that the item will be at that place at the time the warrant is executed. An example is where an employee of a package delivery service discovers an illegal shipment of a controlled substance, contacts the police, who then obtain an anticipatory search warrant for the destination address, and then the package is allowed to continue on to its destination. The warrant is then executed contemporaneously with delivery of the package. See State v. Morrison, 243 Neb. 469, 500 N.W.2d 547 (1993); State v. Ulrich, 265 N.J.Super 569, 628 A.2d 368 (1993), cert. denied, 135 N.J. 304, 639 A.2d 303 (1994); McNeill v. Commonwealth, 10 Va.App. 674, 395 S.E.2d 460 (1990).
[5] We note that in certain other jurisdictions anticipatory search warrants have recently been ruled invalid based on a holding that present-and past-tense language in the controlling statute did not authorize a finding of probable cause based on future events. See People v. Poirez, 904 P.2d 880 (Colo.1995); People v. Ross, 267 Ill. App.3d 711, 642 N.E.2d 914, 205 Ill.Dec. 49 (1994), appeal allowed, 161 Ill.2d 537, 649 N.E.2d 423, 208 Ill.Dec. 367, judgment affirmed, 168 Ill.2d 347, 659 N.E.2d 1319, 213 Ill.Dec. 672 (1995); State v. Gillespie, 530 N.W.2d 446 (Iowa 1995).
[6] Rule 3.8 became effective January 1, 1991. See Committee Comments to Rule 1.5, Ala. R.Crim.P.