709 So.2d 1111 (1996)
Ex parte Ronald Lee WRIGHT.
(Re Ronald Lee Wright
v.
State).
1951073.
Supreme Court of Alabama.
December 13, 1996.
David S. Luker and J. William Cole, Birmingham, for petitioner.
Jeff Sessions and Bill Pryor, attys. gen., and Jean Williams Brown, asst. atty. gen., for respondent.
SHORES, Justice.
We granted certiorari review to decide the validity of an anticipatory search warrant based upon an affidavit showing probable cause that at some future time (but not currently) certain evidence of a crime will be located at a specified place. Based on the evidence seized in a search resulting from an anticipatory search warrant, Ronald Lee Wright was convicted of trafficking in marijuana; he was sentenced to 10 years in the penitentiary and fined $25,000. The Court of Criminal Appeals affirmed, with an unpublished memorandum. Wright v. State, 683 So.2d 1069 (Ala.Crim.App.1996) (table). We reverse and remand.
On September 23, 1993, John Minor, without solicitation by police officers, went to the home of Ronald Lee Wright to arrange to sell him marijuana. Wright contends that at this meeting the two never discussed drugs and agreed only to the trade of Wright's pickup truck and $2,500 in exchange for an automobile owned by Minor. Police had previously caught Minor with over 80 pounds of marijuana, and Wright alleges that he had been "set up" by Minor who, Wright says, was seeking to lighten his sentence by falsely implicating Wright in marijuana trafficking.
After his initial meeting with Wright, Minor telephoned Agent N.E. Willingham of the Alabama Department of Public Safety, Narcotics Division, and told him that Wright had agreed to purchase 10 pounds of marijuana. Based upon his conversation with Minor, Agent Willingham executed an affidavit for an anticipatory search warrant; the affidavit stated as follows:
"My name is N.E. Willingham, I am a law officer with the ... Alabama Department of Public Safety, Narcotic Division.
"Your affiant has been a police officer for approximately 19 years. Since February, 1985, your affiant has been employed *1112 by the Alabama Department of Public Safety as a State Trooper. Since July 1988, your affiant has been assigned to the narcotic division as a narcotic agent. During this time, your affiant has been involved in, participated in and led numerous investigations into the possession, distribution and trafficking of controlled substances and violations arising therefrom.
"Further, your affiant is conducting an investigation focusing on Ronald Lee Wright, white male, 11-20-58, and his involvement in trafficking in marijuana.
"Further, your affiant has received information from a cooperating individual (`CI') who met with Ronald Lee Wright on Thursday, September 23, 1993 at Wright's residence located at the premises known as 16607 Binion Creek Heights, Northport, Tuscaloosa County, Alabama. In this meeting the CI stated that Wright talked of wanting to purchase 10 pounds of marijuana. Wright also told the CI that he had someone wanting to purchase 50 pounds of marijuana at a later date.
"Further, the CI told Ronald Lee Wright he could arrange to sell Wright 10 pounds of marijuana for $1,000 a pound. In the conversation Wright agreed to pay the CI $5,000 in U.S. currency and to trade a 1984 Ford truck to the CI upon receiving the marijuana. In addition, Wright agreed to pay CI $1,000 in U.S. currency at a later date upon selling the marijuana.
"At the direction of Agent Willingham the CI contacted Wright by telephone to set a date and time for the marijuana transaction to take place. In the telephone conversation with Wright, Wright told the CI that he was prepared to conduct the transaction on Friday, 09-24-93 before 11:00 a.m. at his residence. Wright told the CI to call him at his residence before coming to his residence to make sure no one else was at the residence.
"Further, on Friday 09-24-93 your affiant will furnish the CI with a quantity of marijuana and place an electronic transmitter on his person to allow the recording and monitoring of conversation. Further, at the direction and control of your affiant the CI will travel to the residence of Ronald Lee Wright located at the premises known as 16607 Binion Creek Heights, Northport, Tuscaloosa County, Alabama. The CI will meet with Wright and allow Wright to take custody of the marijuana provided to the CI him [sic] by your affiant. During the marijuana transaction narcotic agents will conduct surveillance of the area.
"Further, upon completion of the transaction narcotic agents will travel to the residence of Ronald Lee Wright and conduct a search of Wright and the premises known as 16607 Binion Creek Heights, Northport, Tuscaloosa County, Alabama for the marijuana and evidence of marijuana trafficking."
As a result of Agent Willingham's affidavit, the magistrate issued a search warrant on September 24, 1993, the morning of the anticipated marijuana transaction. It stated that the magistrate was "satisfied that there is probable cause to believe that [marijuana and evidence of marijuana trafficking] will be concealed on the person, premises, or automobile [of Wright]." (Emphasis added). The warrant authorized a search within the next 12 hours, after the anticipated marijuana transaction would have taken place.
The same morning, at about 11 o'clock, Minor drove his automobile to Wright's residence, taking with him a brown paper bag containing approximately 10 pounds of marijuana, which had been supplied to him by police. Minor was followed by Agent Willingham and other law enforcement officers and was "wired" so as to enable the police to hear and record conversations that would occur at Wright's residence. When Minor arrived, he and Wright spoke briefly in the house and then stepped outside. At some point, the bag containing the marijuana was transferred from Minor's automobile to a garbage can that had been located near Wright's house. Because the police were monitoring the situation from an out-of-sight position down the road, they could not see the transfer, but Minor testified that Wright rolled the garbage can toward Minor's automobile and placed the bag into the garbage can. Agent Willingham testified that he and the other agents immediately drove into *1113 Wright's driveway and there saw Wright wheeling the garbage can toward his house. Upon seeing the agents, Wright ran toward the rear of his residence, holding the garbage can as he ran. The police chased Wright and surrounded him on the back side of his house; he was still holding the garbage can. Agent Willingham then arrested and handcuffed Wright and served the search warrant upon him. However, Willingham did not at that time look inside the garbage can to verify that it contained the marijuana. Instead, Wright was taken inside the house and there was informed of his Miranda rights. Willingham removed the marijuana from the garbage can only after he had taken a statement from Wright inside the house. The marijuana was subsequently admitted at Wright's trial.
At trial, Wright argued that the search warrant was anticipatory in nature and was therefore not supported by probable cause when it was issued. Wright contends that the trial court should have suppressed the marijuana, arguing that the police recovered it as a result of an illegal search. The Court of Criminal Appeals rejected Wright's argument, holding in its unpublished memorandum that the search of the garbage can was conducted pursuant to a valid search warrant and was therefore legal. That court found that the warrant was indeed prospective in nature, but stated that "[a]nticipatory search warrants are valid in this state." Thus, we must consider whether the Court of Criminal Appeals was correct in holding that the search of the garbage can was justified on the basis that it was conducted pursuant to the search warrant. We hold that it was not. Therefore, we reverse.
In affirming Wright's conviction, the Court of Criminal Appeals cited its opinion in Oswalt v. State, 686 So.2d 361 (Ala.Cr.App. 1994), for the proposition that anticipatory warrants are valid in Alabama. However, after the Court of Criminal Appeals issued its unpublished memorandum affirming Wright's conviction, this Court reversed the judgment of the Court of Criminal Appeals in Oswalt. See our opinion in Ex parte Oswalt, 686 So.2d 368 (Ala.1996), holding that the anticipatory search warrant in Oswalt was not valid under state law. The prosecution of Oswalt, like the prosecution of Wright, was brought in Tuscaloosa County, and in both cases the same narcotics officer, Agent Willingham, made his drug trafficking case by executing an anticipatory search warrant. In Ex parte Oswalt this Court stated that while an anticipatory search warrant is not unconstitutional per se, the threshold question in considering an anticipatory warrant is whether the specific warrant was authorized by Rule 3.8, Ala. R.Crim. P., which enumerates the grounds that will support the issuance of a search warrant. Analyzing the search warrant in the Oswalt case, this Court said:
"The plain language of subsections (1) and (2) of § 15-5-2, which are echoed by subsections (1) and (2) of Rule 3.8, require that the evidence to be seized be evidence of a criminal offense that has already occurred. Although subsection (3) of § 15-5-2, which is mimicked by subsection (3) of Rule 3.8, requires only the intent to commit a criminal offense rather than the actual commission of a crime, it requires that the evidence be presently in the possession of the person whose premises are to be searched. Thus, we conclude that when the legislature enacted § 15-5-2, and when much of the language of that statute was adopted by this Court into one of the Rules of Criminal Procedure, without any expression of a differing, more expansive intent, there was no intent to allow the issuance of a search warrant where, as in this case, the crime to which the evidence at issue relates has not yet occurred and the evidence to be seized is not presently in the possession of the person whose premises are to be searched."

Ex parte Oswalt, 686 So.2d at 373. (Emphasis in original.) Based upon this analysis in Oswalt, we strongly recommended that "the Criminal Rules Advisory Committee redraft Rule 3.8 to permit the broader issuance of anticipatory search warrants than the rule currently allows." Oswalt, 686 So.2d at 374. However, we also held that the warrant in Oswalt was void:
"[T]he crime, Oswalt's purchase and possession of a large volume of a controlled *1114 substance, had not yet occurred and the evidence, the cocaine, was not in his possession at the time the search warrant was issued. Accordingly, the requirements of Rule 3.8 had not been met when the search warrant was issued, and the warrant was not valid under Alabama law."
686 So.2d at 373-74 (footnote omitted).
Similarly, the warrant used in this case to justify the search of the garbage can was not valid under Rule 3.8, Ala. R.Crim. P. As we recognized in Ex parte Oswalt, Rule 3.8 does not contemplate the issuance of a search warrant where the crime to which the evidence at issue relates has not yet occurred and the evidence to be seized is not presently in the possession of the person whose premises are to be searched. In this present case, it is uncontested that "the crime, [Wright's] purchase and possession of a large volume of a controlled substance, had not occurred and the evidence, the [marijuana,] was not in his possession at the time the search warrant was issued." See 686 So.2d at 373-74. Thus, the search warrant purporting to authorize the search of Wright's premises was not valid under Rule 3.8.
Accordingly, we hold that the search of the garbage can was not made lawful by the fact that it was authorized by the search warrant.[1] However, our holding here should not be interpreted to mean that the marijuana evidence necessarily must have been suppressed at trial pursuant to the Fourth Amendment exclusionary rule. We hold today only that the search could not be justified on the grounds that it was authorized by a valid search warrant. We do not express an opinion on the separate questions whether the police could nonetheless have reasonably relied upon the invalid warrant in "good faith," see United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Ex parte Morgan, 641 So.2d 840 (Ala.1994), or whether the circumstances of this case might have allowed a warrantless search of the garbage can under the Fourth Amendment. See Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). As in Ex parte Oswalt, where we remanded to allow the trial court to make the initial determination whether the State could make a sufficient showing of exigent circumstances to justify a warrantless search, we believe that these questions should be passed upon by the trial court in the first instance. The judgment of the Court of Criminal Appeals affirming Wright's conviction, based upon the holding that the search warrant was valid under Alabama law, is reversed. This cause is remanded with instructions for the Court of Criminal Appeals to remand it to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and KENNEDY, COOK, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
HOUSTON, Justice (dissenting).
I joined Justice Maddox's dissent in Ex parte Oswalt, [Ms. 1950203, May 24, 1996] 686 So.2d 368 (Ala.1996), and I am still convinced, based upon Justice Maddox's reasoning in his dissent in Oswalt, that the search and seizure in Oswalt and the search and seizure in this case were not "unreasonable." The United States and Alabama Constitutions *1115 protect individuals only from "unreasonable searches and seizures" (Amendment IV, United States Constitution) and "unreasonable seizure or searches" (Art. I,§ 5, Alabama Constitution 1901).
MADDOX, J., concurs.
NOTES
[1] The dissent states that the searches in both this case and in Oswalt were not "unreasonable" under either the Fourth Amendment of the United States Constitution or Art. I, § 5, of the Alabama Constitution of 1901. We may agree on this point, but that is not the specific question before us. Rather, the issue here, as it was in Oswalt, is whether the search warrant itself could be used to justify the search. We merely hold that Rule 3.8 does not contemplate the anticipatory search warrants relied upon in this case and in Oswalt, and, therefore, that those warrants were not valid and could not, in themselves, justify the searches. We do not hold that the search itself was necessarily "unreasonable" under the either the Alabama or United States Constitution. This is evident from our recognition that the searches in these cases might be justified on grounds other than having been conducted pursuant to a valid warrant, as we explain in the text. Our recommendation in Oswalt that Rule 3.8, Ala. R.Crim. P., should be amended to authorize the issuance of anticipatory search warrants under certain circumstances also demonstrates our belief that searches conducted pursuant to anticipatory search warrants are not unconstitutional per se. Amending a Rule of Criminal Procedure would, of course, be futile if we interpreted constitutional provisions to prohibit the very amendment being made.