613 A.2d 395

STATE of Maryland

v.

Frederick Roy LEE.

No. 568, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Sept. 30, 1992.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Lawrence V. Kelly, State's Atty. for Allegany County, Cumberland, on the brief), for appellant.

R. Steven Friend, Cumberland, for appellee.

Argued before GARRITY, BLOOM and DAVIS, JJ.

BLOOM, Judge.

This appeal by the State, pursuant to § 12–302(c)(3) of the Courts and Judicial Proceedings Article of the Maryland Code (1973, 1989 Repl.Vol.), is from an order of the Circuit

Court for Allegany County (Leasure, J.) granting the motion of appellee, Frederick Roy Lee, to suppress as evidence certain items (controlled dangerous substances, drug paraphernalia, and money) that were seized and removed from his home by virtue of a search and seizure warrant.

The State suggests that the single issue before us—one that has not heretofore been addressed either by the Court of Appeals or this Court—is whether the use of anticipatory warrants should be sanctioned in Maryland. We decline to so frame the issue; the case as presented to us involves only the question of whether Judge Leasure erred in ruling that the specific warrant in question, authorizing and directing a search of appellant's residence, was invalid. Holding that he did not err, we shall affirm the suppression order from which this appeal was taken.

## I

By criminal information filed in the Circuit Court for Allegany County, appellee was charged with possession of LSD in sufficient quantity to indicate an intent to distribute, possession of LSD, possession of marijuana, and two counts of possession of drug paraphernalia. By motion to suppress, appellee challenged the validity of the search warrant by means of which police officers entered his place of residence and seized and removed therefrom certain items, including controlled dangerous substances and drug paraphernalia. The court granted appellee's motion and this appeal from that decision was promptly noted by the State.

There is no basic dispute concerning the facts giving rise to the motion to suppress. On 9 December 1991 a confidential informant telephoned Trooper First Class Jack Matthew of the Maryland State Police Drug Enforcement Division. The informant told Officer Matthew that he was able to purchase LSD from appellee. Matthew arranged to meet the confidential informant and set up a "controlled buy" at appellee's home.

Armed with this information, Matthew applied to a judge of the District Court for a search warrant. The affidavit accompanying the application for the warrant included the following information: (1) Matthew was familiar with controlled substances, investigations, search warrants, and the like; (2) he was advised by the confidential informant that appellee was presently in possession of LSD and would receive more LSD that day;[1] (3) the confidential informant would make a "controlled buy" that night; (4) on 8 February 1988 appellee had been convicted of a drug offense; (5) two months prior to the application a fellow officer received information indicating that appellee was engaged in the distribution of LSD.

Relying on that information, the District Court judge issued a search warrant authorizing a search of appellee's home but made execution of the warrant contingent upon confirmation of a purchase of LSD by the confidential informant on the same day.

Shortly thereafter, Matthew met with the confidential informant and arranged the purchase. He supplied the confidential informant with a ten dollar bill for use in the impending drug transaction. The confidential informant then traveled to West Virginia to pick up an "unwitting individual" (his brother). The two allegedly purchased two "hits" of LSD from appellee at his home. The police did not maintain constant surveillance of appellee's home as those events transpired.[2]

---

1. The affidavit did not describe the informant as "reliable" or otherwise indicate that the police had any historical basis to give credence to his information. According to the affidavit, the confidential informant had obtained his information from an unnamed individual who advised the informant that he could arrange a purchase of LSD for the informant.

2. The procedure adopted by the police after the warrant was issued hardly meets the standard for a "controlled buy," which typically involves a search of the prospective purchaser to ensure that he is not bringing the contraband to the scene, supplying the purchaser with money that can later be identified by serial numbers or coded markings, police surveillance to ensure that if a purchase is made it is

Immediately after the purchase, the confidential informant met with Matthew and surrendered to him the substance purportedly obtained from appellee. Without benefit of a field test, Matthew identified the substance as LSD and immediately executed the search warrant of appellee's home. The search yielded controlled dangerous substances, drug paraphernalia, and a ten dollar bill.

Appellee filed a pretrial motion to suppress the seized evidence. In granting that motion, the circuit court ruled that the warrant was invalid for lack of probable cause and that Matthew had obtained the warrant prematurely. Judge Leasure concluded that Matthew should have arranged for the purchase of LSD from appellant before applying for the search warrant, so that the District Court judge could have been informed about the particulars of the sale before he issued a warrant. This appeal from the suppression order followed.

## II

Anticipatory warrants are warrants "based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 W. LaFave, *Search & Seizure*, § 3.7(c), at 94 (2d ed. 1987). By definition, such warrants are "issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir.1989), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

Although anticipatory warrants are issued in advance of the happening of events that are a necessary prerequisite to the constitutionality of the warrants themselves, federal and state courts that have addressed the issue are almost unanimous in holding that the warrants are not *per se*

---

made from the suspect or on his premises, and a search of the purchaser after the "buy," to ensure that he now has the contraband and not the money.

unconstitutional. *United States v. Wylie,* 919 F.2d 969, 974 (5th Cir.1990); *Garcia,* 882 F.2d at 703; *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.E.2d 155 (1989); *United States v. Hale,* 784 F.2d 1465, 1468 (9th Cir.1986), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986); *United States v. McGriff,* 678 F.Supp. 1010, 1014 n. 5 (E.D.N.Y.1988); *Commonwealth v. Reviera,* 563 A.2d 1252, 1254 (Pa.Super.1989); *State v. Wright,* 115 Idaho 1043, 772 P.2d 250, 258 (Ct.App.1989); *State v. Mier,* 147 N.J.Super. 17, 370 A.2d 515, 517 (Ct.App.Div.1977); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 659, 282 N.E.2d 614, 615, *cert. denied,* 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972); *Alvidres v. Superior Court,* 12 Cal.App.3d 575, 581, 90 Cal.Rptr. 682 (1970). The linchpin of the Fourth Amendment is reasonableness, and courts have concluded that it is "not unreasonable for a magistrate to believe certain controllable events will occur in the near future, *e.g.,* that the post office will deliver a package the next day, when responsible officials so advise him." *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.1978), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978).

Courts consistently have rejected the argument that at the time of issuance of the warrant there must be probable cause to believe that property subject to seizure is presently located at the place to be searched, so long as " 'there is probable cause to believe that it will be there when the search warrant is executed.' " *Garcia,* 882 F.2d at 702, citing *Lowe,* 575 F.2d at 1194. The New York Court of Appeals explained the reasoning as follows:

At best, present possession is only probative of the likelihood of future possession. In cases like these the certainty of future possession is greater or is often greater than that based on information of past and presumably current possession.

*Glen,* 331 N.Y.S.2d at 661, 282 N.E.2d at 617. In fact, "it may fairly be said that as a general proposition the facts put forward to justify issuance of an anticipatory warrant

are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon known prior location of the items to be seized at the place to be searched." 2 W. LaFave, *supra,* at 97.

Based on this reasoning,[3] courts have manifested a willingness to uphold anticipatory warrants where contraband is on a "sure and irreversible course to its destination." *Hale,* 784 F.2d at 1468. *See also, Wylie,* 919 F.2d at 974 (collecting cases); *Mier,* 370 A.2d at 517; *State v. Cox,* 110 Ariz. 603, 522 P.2d 29, 34 (1974) (warrant issued in anticipation of defendant's arrival into the jurisdiction with contraband); *Glen,* 331 N.Y.S.2d at 662, 282 N.E.2d at 618 ("The necessary pieces were in motion and all but inevitably the pieces would fall into a set, at a later time, constituting the crime."). *But see United States v. Hendricks,* 743 F.2d 653, 654 (9th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985) (anticipatory warrant invalid where shipment terms required suspect to pick up package at a depository because there was no certainty that suspect would ever bring package to his home, the place to be searched).

Most typically, authorities intercept illegal drugs, child pornography, or other contraband in the course of shipment to the defendant. The parcel is specifically addressed to the defendant (or his alias) and, but for the temporary intervention of law enforcement authorities, would continue undisturbed on its course to its stated destination. *Glen,* 331 N.Y.S.2d at 662, 282 N.E.2d at 617–18 ("the crime and the

---

**3.** Courts also frequently cite public policy considerations in support of anticipatory warrants. Law enforcement personnel, particularly those engaged in the herculean task of drug interdiction, face a dilemma. If they proceed sans warrant, they risk suppression. If they secure a warrant in advance, they waste precious time and risk destruction, concealment, or asportation of the contraband. Anticipatory warrants represent an attempt to reconcile these competing interests by combining prior judicial approval with the flexibility of timely issuance. *Garcia,* 882 F.2d at 703; *Wright,* 772 P.2d at 256; *Reviera,* 563 A.2d at 1256; *Mier,* 370 A.2d at 517–18; *Glen,* 331 N.Y.S.2d at 660, 282 N.E.2d at 616; *Alvidres,* 12 Cal.App.3d at 581, 90 Cal.Rptr. 682.

person involved [are] committed by the chain of circumstances already in process but short of consummation, so that in the natural course of events the crime would occur at the time and place with defendant's implication"). After ascertaining, the illegal nature of the contents of such parcels, the authorities obtain anticipatory warrants authorizing seizure of the evidence only upon verified delivery to the defendant. These "controlled" deliveries [4] are most often carried out by law enforcement officers posing as mail carriers or UPS employees,[5] although in some cases authorities simply monitor the delivery to and receipt by defendant.[6]

Courts have recognized that warrants issued before criminal possession has actually occurred present greater potential for abuse than do more routine warrants based on past events that indicate likely current possession. The potential

---

**4.** Most courts that have considered the issue have upheld anticipatory warrants based on controlled delivery of contraband. *Lowe,* 575 F.2d at 1194; *United States ex rel. Beal v. Skaff,* 418 F.2d 430, 432–34 (7th Cir.1969); *Bernie v. State,* 524 So.2d 988, 991 (Fla.1988); *Commonwealth v. Soares,* 384 Mass. 149, 424 N.E.2d 221, 224–25 (1981); *Russell v. State,* 182 Ind.App. 386, 395 N.E.2d 791, 798–800 (1979).

**5.** *State v. Engel,* 465 N.W.2d 787, 789 (S.D.1991); *McNeill v. Comm.,* 10 Va.App. 674, 395 S.E.2d 460, 463 (1990); *Mier,* 370 A.2d at 517–18; *Alvidres,* 12 Cal.App.3d at 581, 90 Cal.Rptr. 682. In *Wylie,* cited in appellant's brief, although the Fifth Circuit labeled the warrant anticipatory, the police actually obtained the search warrant after delivery of the contraband. 919 F.2d 969 (5th Cir.1990). As a result, the *Wylie* case is inapposite.

**6.** *Garcia,* 882 F.2d at 702–04 (cooperating co-defendants deliver parcel as DEA agents watch); *Hale,* 784 F.2d at 1468 (authorities watch postal service employee deliver parcel); *Dornhofer,* 859 F.2d at 1198 (police watch mail carrier deliver parcel); *Johnson v. State,* 617 P.2d 1117, 1124–25 (Alaska 1980) (authorities watch suspect's sister pick up parcel and bring to suspect's home); *State v. Sachs,* 264 S.C. 541, 216 S.E.2d 501 (1975) (police watch suspect's sister deliver parcel to suspect's home); *Glen,* 331 N.Y.S.2d at 661, 282 N.E.2d at 617. *But see Reviera,* 563 A.2d at 1257 (absence of contingency in warrant for execution of warrant not fatal where warrant issued only minutes before the time that a participant in criminal venture said he expected delivery of contraband, so that premature execution of warrant was unlikely).

problems are threefold. The Court of Appeals of Idaho has explained that the risks inherent in anticipatory warrants include the risk of premature issuance, the risk of judicial abdication of the probable cause determination, and the risk of premature execution. *Wright*, 772 P.2d at 258–59.

Premature issuance refers to clearly unconstitutional anticipatory warrants based on "mere speculation of future criminal activity," or on evidence indicating "only that the suspect is expected to commit a crime in the future." *Id.* "[S]peculation or inference, however good, that a crime will be committed in the future at a certain place" cannot sustain a warrant. *Glen*, 331 N.Y.S.2d at 662, 282 N.E.2d at 617. *See also, Reviera*, 563 A.2d at 1255. To protect against such abuse, courts have required a particularized showing that the items to be seized will be in the place to be searched at a specified time. "The courts often speak in terms of 'inevitability' or 'imminence' when referring to this requirement." *Wright*, 772 P.2d at 258.

> [W]here there is no present possession the supporting evidence for the prospective warrant must be strong that the particular possession of particular property will occur and that the elements to bring about that possession are in process and will result in the possession at the time and place specified. Otherwise, the hated general writs of assistance of pre-Revolutionary times would be revived, in effect, despite constitutional limitations.

*Glen*, 331 N.Y.S.2d at 661, 282 N.E.2d at 617.

Controlled deliveries are unique in providing the necessary imminence and inevitability. The issuing magistrate can foresee with near certainty not only that the crime will come to fruition, but also that it will unfold precisely as set forth in the warrant application. Delivery is entirely within the control of authorities, and little or no cooperation is required from the suspect or others. With minimal reliance on the unpredictable behavior of private citizens, there is little risk of deviation from the schedule of events set forth in the warrant. *See Garcia*, 882 F.2d at 704 (warrant only

required deposit of the contraband in the suspect's home, not affirmative acceptance by him).

## III

The facts of this case are in sharp contrast to those involved in the controlled delivery cases in which the anticipatory warrants were approved. The District Court judge who issued the warrant in this case had to assume not only that appellee would come into possession of LSD and that he would then sell it, but also that the confidential informant and "unwitting individual" (about whom the authorities knew nothing) would cooperate fully in the enterprise and engage the defendant in a sale. The evidence submitted in support of this conjecture comes precariously close to "mere speculation." The bulk of the evidence contained in the affidavit relates to the statements of an unidentified confidential informant whose information stems not from personal knowledge, but from the uncorroborated statements of yet another unidentified "unwitting individual." Nowhere in the affidavit did Trooper Matthew aver that either of those individuals has proven to be reliable in the past. On such a weak factual predicate, it can hardly be said that a sale of LSD was inevitable or on a "sure course" to fruition.

The second risk represented by anticipatory warrants, and one closely related to the risk of premature issuance, is the risk that the magistrates may abdicate to law enforcement agents the essential judicial function of determining whether probable cause exists. *Hendricks,* 743 F.2d at 653; *Wright,* 772 P.2d at 259. "By requiring a particularized showing before the warrant is issued, the magistrate can ensure that he or she—not the officers in the field—will determine when, and whether, there should be a search." *Wright,* 772 P.2d at 259. The Second Circuit has described the required showing as follows:

> Magistrates and judges should [ ] take care to require independent evidence giving rise to probable cause that the contraband will be located at the premises at the time

of the search. This means that affidavits supporting the application for an anticipatory warrant must show, not only that the agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery. Judicial officers must then scrutinize whether there is probable cause to believe that the contraband will be located on the premises when the search takes place.

*Garcia,* 882 F.2d at 703.

■ As noted *supra,* the issuing judge did not have probable cause to believe that LSD was at appellee's residence or would reasonably certainly be there when the warrant was executed; · he necessarily had to entrust the probable cause determination to the officers in the field. He did so by placing a condition in the command clause of the warrant authorizing search only upon "verification" of a sale of LSD, but he did not specify what would constitute "verification." Normally, whether a verified sale has occurred is a murky factual decision best left to be determined by a neutral and detached magistrate. Delegation of this determination to the police by the warrant-issuing magistrate amounts to an abdication of judicial authority inconsistent with the guarantees of the Fourth Amendment.

The third risk inherent in anticipatory warrants is premature execution, which refers to the possibility that overzealous government agents will carry out the search and seizure in advance of the happening of the condition precedent to the validity of the warrant.

[A] warrant which antedates the commission of an offense which is relied upon to support its issuance might lack an essential element of judicial control: the requirement that probable cause exist to believe that execution will not precede the commission of the crime or possession of the goods to be seized.

*United States ex rel. Beal v. Skaff,* 418 F.2d 430, 433 (7th Cir.1969).

Therefore, "when an anticipatory warrant is used, the magistrate should protect against its premature execution by listing in the warrant conditions governing the execution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Garcia,* 882 F.2d at 703–04. *See also, Reviera,* 563 A.2d at 1256. By specifying the precise circumstances under which the warrant may be executed, the magistrate can prevent authorities from "weighing evidence obtained after the warrant's issuance, in determining for themselves when the search should occur." *Wright,* 772 P.2d at 259.

It is a relatively simple task for a magistrate to detail the necessary elements of a controlled delivery. Before securing the warrant, authorities have tested the parcel and determined that it contains contraband. The magistrate only has to specify when delivery will be deemed completed, *i.e.,* deposit in the suspect's mailbox or hand-to-hand delivery, and what method of police participation or surveillance will be required.

■ Conversely, the "verified sale" in the case *sub judice* does not lend itself to such detailed prescription by the magistrate. The steps leading to the consummation of the sale, if indeed it occurs at all, may take many forms. Even assuming the magistrate could dictate specific steps to be taken to verify that a sale has occurred, there remains great risk that the confidential informant and the unwitting individual will not abide by these instructions. Unlike law enforcement personnel conducting or observing a controlled delivery, the confidential informant and unwitting individual have no law enforcement training and may have their own agenda. In any event, the issuing judge here did not define "verified sale" for the executing officers. He gave them absolutely no guidance on this critical issue.

In addition to requiring that the warrant contain detailed instructions for the executing authorities, the California Court of Appeals in *Alvidres* enunciated another factor that may serve to minimize the chances of premature execution:

It is logical to assume that when officers obtain a warrant to search for and seize particular property which they have probable cause to believe will be on the premises at a specified future time, they would not be disposed to undermine the success of their efforts by premature execution of the warrant.

12 Cal.App.3d at 582, 90 Cal.Rptr. 682. *See also, Wright,* 772 P.2d at 257; *Johnson v. State,* 617 P.2d 1117, 1124 (Alaska 1980). This may hold true where the authorities themselves control the delivery—they know when the package has been delivered and common sense would lead them to deliver first and search later.

In the case at bar, however, the authorities neither controlled nor observed the alleged drug purchase. By necessity, they relied on the judgment and veracity of the confidential informant and unwitting individual in ascertaining whether the purchase occurred. Moreover, they were not required to, nor did they, perform a field test to ensure that the substance allegedly obtained from appellee was in fact a dangerous controlled substance. They were also not required to, nor did they, strip search the confidential informant and unwitting individual before and after the alleged sale to make certain that appellee was the source of the substance delivered to the police. In fact, the officers allowed the confidential informant to drive to West Virginia to pick up the unwitting individual and then failed to maintain surveillance as the two entered appellee's home and allegedly bought LSD. This series of events created an unacceptably high risk that the officers would execute the warrant prematurely—that is, before a "verified buy" had actually transpired.

## IV

Whether Maryland will or should approve the issuance and use of anticipatory search warrants is an interesting question, which will undoubtedly have to be met squarely and decided some day. On the facts of this case, however, we need not and therefore shall not address it. A

court should not rule on constitutional issues unless it is necessary to do so in order to decide the case or controversy before it. As the Supreme Court said with respect to its authority, in *Liverpool, New York & Philadelphia Steam-Ship Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885):

> In the exercise of that jurisdiction [to pronounce a statute void because irreconcilable with the constitution], it is bound by two rules, to which it has rigidly adhered, one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.

*See also Petite v. United States*, 361 U.S. 529, 531, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960).

That principle has been adhered to by the Court of Appeals of Maryland and by this Court. *Jeffers v. State*, 203 Md. 227, 230, 100 A.2d 10 (1953) ("It is an almost undeviating rule of the courts, both State and Federal that a constitutional question will not be decided except when the necessity for such decision arises in the record before the court"); *Wilkins v. State*, 16 Md.App. 587, 598, 300 A.2d 411 (1973) ("... the best teaching of judicial experience 'admonishes us not to entertain constitutional questions in advance of the strictest necessity.' ") (citations omitted).

We shall limit our holding in this case, therefore, to affirming the order appealed from on the ground that the anticipatory warrant for the search of appellant's home was invalid because it was issued without probable cause. For the reasons set forth above, even if anticipatory warrants are not *per se* violative of the Fourth Amendment, the warrant in this case is, because (1) there was at the time of issuance no probable cause to believe—only speculation—that at some point in time a transaction would occur that would demonstrate the existence of contraband in the premises to be searched; and (2) it was left to the unrestricted

judgment of the executing officer to determine whether the triggering event, a "verified buy," had occurred.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY ALLEGANY COUNTY.