685 A.2d 1222

**Joseph KOSTELEC**

v.

**STATE of Maryland.**

**No. 2005 Sept.Term 1995.**

Court of Special Appeals of Maryland.

Dec. 6, 1996.

658

**659**

Richard D. Neidig, Adam C. Linn, Columbia (Byron L. Warnken, Baltimore, on the brief), for Appellant.

Tarra DeShields-Minnis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Marna McLendon, State's Attorney for Howard County, Ellicott City, on the brief), for Appellee.

Submitted before MOYLAN, HOLLANDER and EYLER, JJ.

EYLER, Judge.

A jury in the Circuit Court for Howard County convicted Joseph Kostelec, the appellant, of possession of more than 16 ounces of phencyclidine ("PCP") with intent to distribute, simple possession of PCP, possession of cocaine, possession of marijuana, and two counts of possession of controlled drug paraphernalia. The court merged simple possession of PCP into possession of PCP with intent to distribute and imposed a mandatory prison sentence of five years without possibility of parole.[1] It then imposed prison sentences of six months for possession of cocaine and six months for possession of marijuana, to run concurrently with the mandatory sentence. The court further imposed $50.00 fines for each of the convictions for possession of controlled drug paraphernalia.

In this appeal, appellant argues, in essence, that:

---

1. *See* Md. Ann.Code, art. 27, § 286(f)(3)(i) (1957, 1996 Repl.Vol.).

I.  The trial court erred by denying his motion to suppress evidence, in that the evidence was seized during the execution of an "anticipatory" search warrant;

II.  The evidence was insufficient to support his conviction for possession of PCP;

III.  The trial court erred by refusing to admit an out-of-court statement made by an alleged accomplice as a statement against penal interest;

IV.  The trial court erred by refusing to permit the defense to introduce evidence that he had not previously used PCP or cocaine; and

V.  The trial court erred by refusing to ask a proposed *voir dire* question.

On September 27, 1996, this Court issued, for publication, an opinion by which we affirmed the judgments of the trial court. *Kostelec v. State,* No. 2005, September Term, 1995, slip op. (September 27, 1996). Thereafter, on October 25, 1996, appellant filed a motion for reconsideration. Appellant does not specify in his motion what actions he desires this Court to take, other than to correct perceived inaccuracies in the September 27 opinion. In particular, appellant asserts that (i) in part III of the opinion, we erroneously indicated that the trial court found that a statement made by a witness was not against the witness's penal interest, and (ii) in part V of the opinion, we erroneously indicated that defense counsel failed to object to the trial court's refusal to ask a proposed *voir dire* question. Presumably, appellant believes that once these perceived inaccuracies are corrected, reversal of his convictions will follow. Because defense counsel did indeed object to the trial court's failure to ask the proposed *voir dire* question, we withdraw our September 27 opinion, grant the motion for reconsideration, and issue this revised opinion by which we correct and clarify part V of that opinion. We are satisfied that our characterization of the trial court's finding as to the witness's statement is accurate, so we leave intact part III of the September 27 opinion. Again, we affirm the judgments of the trial court.

## Facts

In March of 1995, appellant permitted his long-time friend, Roarke Boulton, who was down on his luck, to move into his Elkridge home. On April 5, 1995, Howard County police intercepted a Federal Express package addressed to "Joey Labaugh, 7118 Dogwood Road, Baltimore, Maryland 21244." Police obtained a search warrant for the package and determined that it contained two bottles of PCP. They then resealed the package and made a controlled delivery to 7118 Dogwood Road. The package was accepted by Randal Lucabaugh, who was placed under arrest.

Lucabaugh told police that a portion of the package was ultimately to be delivered to Roarke Boulton, who lived in Elkridge. Lucabaugh then agreed to make a monitored telephone call to Boulton, who confirmed that he was to receive a portion of the package. Lucabaugh informed Boulton that a third person would deliver the package to Boulton's residence, and that the third person would contact Boulton to make arrangements for the delivery. An undercover officer then telephoned Boulton at the number provided by Lucabaugh, and Boulton stated that he was to receive the entire package. Boulton gave the officer appellant's address. A police check established that the telephone number at which Boulton was reached was listed to appellant.

Police then obtained a search warrant for appellant's home, on the condition that the warrant would not be executed until the package was delivered to and accepted by someone therein. They attached an electronic device to the package that would secretly alert them when the package was opened. Later during the evening of April 5, an undercover officer delivered the package. Appellant answered the door and accepted the package for Boulton, and the officer departed. Within minutes, the electronic device signalled the police that the package had been opened.

The police immediately made a no-knock entry into appellant's home. Both appellant and Boulton were in the living room, with appellant sitting on a love seat and Boulton sitting

on the adjacent couch. The opened package was on the coffee table, with one bottle of PCP still inside it. The other bottle of PCP was sitting on the floor between Boulton and the coffee table. Neither bottle had been opened, but the odor of PCP emanated from the bottle on the floor.

Appellant and Boulton were handcuffed and the search warrant was executed. The two bottles of PCP were seized, and subsequent analysis confirmed that together they contained nearly 40 ounces of PCP. Under the kitchen sink, police found an aluminum can that had been crushed and perforated, apparently for use as a pipe. The can proved to contain a trace amount of cocaine. A second pipe, also containing a trace amount of cocaine, was found in a dresser drawer in appellant's bedroom. A third pipe—this one containing marijuana residue—was found in a china hutch in appellant's dining room. Three large bottles of parsley flakes were found in the kitchen. A police expert testified that PCP is commonly poured over parsley, which is in turn ingested by smoking.

# I

## Search Warrant

In *State v. Lee,* 93 Md.App. 408, 420, 613 A.2d 395 (1992), *aff'd,* 330 Md. 320, 624 A.2d 492 (1993), this Court commented: "Whether Maryland will or should approve the issuance and use of anticipatory search warrants is an interesting question, which will undoubtedly have to be met squarely and decided some day." That day is upon us.

There is no dispute that the warrant in issue was an anticipatory one, *i.e.,* "based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 Wayne R. LaFave *Search & Seizure* § 3.7(c), at 362 (3rd ed. 1996). As we have observed, Howard County Police obtained a warrant to search appellant's home after they confirmed that Boulton was expecting a delivery there but before the con-

trolled delivery was actually made. The affidavit attached to the application for search warrant stated, in pertinent part:

Your affiant . . . prays that an anticipatory Search and Seizure Warrant be issued for said premises and persons.

Your affiant will only execute said warrant if the following actions are observed at 5967 Rowanberry Drive [appellant's address], within the next fifteen (15) days:

1. A member of the Howard County Police Department will visit the residence at 5967 Rowanberry Drive and present the package containing phencyclidine for delivery.

2. An individual within the residence accepts the package containing the phencyclidine.

3. This individual is observed to carry the package containing the phencyclidine into said residence after the delivery; and

4. Law enforcement officials conduct a constant surveillance of the residence from the time of delivery until the time the warrant is served.

Other than the anticipated controlled delivery of the Federal Express package, the affidavit set forth no probable cause to believe that evidence of a crime would be found in appellant's home. The warrant itself incorporated the affidavit by reference.[2]

The Fourth Amendment to the Constitution of the United States provides, in pertinent part, that "no Warrants shall issue, but upon probable cause. . . ." Article 26 of Maryland's Declaration of Rights directs: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing

---

**2.** The warrant authorized the seizure of various items of property specially enumerated in separately numbered paragraphs. The property included controlled dangerous substances and related paraphernalia, weapons, photographs, documents and other items related to the possession and distribution of controlled dangerous substances.

the place, or the person in special, are illegal, and ought not to be granted." Finally, article 27, § 551(a) of the Annotated Code of Maryland (1957, 1996 Repl.Vol.) provides, in pertinent part:

Whenever it be made to appear to any judge of any of the circuit courts in the counties of this State, or to any judge of the District Court, by written application signed and sworn to by the applicant, accompanied by an affidavit or affidavits containing facts within the personal knowledge of the affiant or affiants, that there is probable cause, the basis of which shall be set forth in said affidavit or affidavits, to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then the judge may forthwith issue a search warrant. . . .

Appellant reads all three of these provisions to require that the evidence sought be situated in the place to be searched at the time the warrant is issued. He asserts that because, by definition, the evidence sought is not yet situated in the place to be searched, anticipatory search warrants are invalid as a matter of law. He further complains that such warrants improperly "place[ ] the ultimate determination of probable cause in the hands of the police officer who applie[s] for the warrant." In the alternative, appellant asserts that even if anticipatory warrants are not *per se* invalid, the warrant in the instant case was invalid because it was not based on probable cause, in that the source of the information that the package was to be delivered to someone at appellant's house was unreliable.

As we have observed, neither this Court nor the Court of Appeals has yet ruled upon the validity in general of anticipatory search warrants. An overwhelming majority of courts from other jurisdictions that have considered the matter have concluded that such warrants do not *per se* offend the Fourth

Amendment. *See United States v. Gendron,* 18 F.3d 955 (1st Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994); *United States v. Tagbering,* 985 F.2d 946 (8th Cir.1993); *United States v. Wylie,* 919 F.2d 969 (5th Cir.1990); *United States v. Garcia,* 882 F.2d 699 (2d Cir.), *cert. denied sub. nom. Grant v. United States,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Dornhofer,* 859 F.2d 1195 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *United States v. Hale,* 784 F.2d 1465 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986); *United States v. Lowe,* 575 F.2d 1193 (6th Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *U.S. ex rel. Beal v. Skaff,* 418 F.2d 430 (7th Cir.1969); *United States v. McGriff,* 678 F.Supp. 1010 (E.D.N.Y.1988); *State v. Stott,* 243 Neb. 967, 503 N.W.2d 822 (1993); *State v. Engel,* 465 N.W.2d 787 (S.D.1991); *State v. Coker,* 746 S.W.2d 167 (Tenn.1987), *cert. denied,* 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988); *Commonwealth v. Soares,* 384 Mass. 149, 424 N.E.2d 221 (1981); *People v. Shapiro,* 37 Cal.App.3d 1038, 113 Cal.Rptr. 54 (1974); *Johnson v. State,* 617 P.2d 1117 (Alaska 1980); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, *cert. denied sub nom. Baker v. New York,* 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972); *State v. Folk,* 74 Ohio App.3d 468, 599 N.E.2d 334 (1991); *Commonwealth v. Reviera,* 387 Pa.Super. 196, 563 A.2d 1252 (1989), *appeal dismissed as improvidently granted,* 526 Pa. 41, 584 A.2d 308 (1991); *Mehrens v. State,* 138 Ariz. 458, 675 P.2d 718 (Ariz.App.1983), *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984); *State v. Mier,* 147 N.J.Super. 17, 370 A.2d 515 (N.J.Super.Ct.App.Div.1977); *State v. Parent,* 110 Nev. 114, 867 P.2d 1143 (1994) (*per curiam* ); *Bernie v. State,* 524 So.2d 988 (Fla.1988) (*per curiam* ). *See generally* 2 LaFave, *Search and Seizure* § 3.7(c).

In *State v. Lee,* 93 Md.App. 408, 613 A.2d 395 (1992), this Court was asked to determine whether a search warrant that was issued in anticipation of a controlled buy of LSD by an unidentified confidential informant passed constitutional muster. We observed that because the assertions in the affidavit

that the buy would take place were based on information supplied by the confidential informant, who had not been proven reliable, they came "precariously close to 'mere speculation.'" *Id.* at 417, 613 A.2d 395. We further observed that the police failed to "maintain surveillance" as the buy was taking place, and that they failed to field test the suspected LSD before they executed the warrant. *Id.* at 420, 613 A.2d 395. We therefore found it unnecessary to decide the issue and explained that,

> even if anticipatory warrants are not *per se* violative of the Fourth Amendment, the warrant in this case is, because (1) there was at the time of issuance no probable cause to believe—only speculation—that at some point in time a transaction would occur that would demonstrate the existence of contraband in the premises to be searched; and (2) it was left to the unrestricted judgment of the executing officer to determine whether the triggering event ... had occurred.

*Id.* at 421–22, 613 A.2d 395. *See State v. Lee,* 330 Md. 320, 328–29, 624 A.2d 492 (1993) (where, in affirming this Court's decision, the Court of Appeals explained that the "warrant failed by its own criteria" in that, by failing to field test the suspected LSD before executing the warrant, the police "failed to fulfill the condition precedent on which the warrant was made contingent by its own terms"). We nevertheless recognized that

> federal and state courts that have addressed the issue are almost unanimous in holding that [anticipatory] warrants are not *per se* unconstitutional.... The linchpin of the Fourth Amendment is reasonableness, and courts have concluded that it is "not unreasonable for a magistrate to believe certain controllable events will occur in the near future, *e.g.,* that the post office will deliver a package the next day, when responsible officials so advise him." ...

93 Md.App. at 412–13, 613 A.2d 395 (citations omitted).

We further explained in *Lee,* in *dicta,* that

[c]ourts consistently have rejected the argument that at the time of issuance of the warrant there must be probable cause to believe that property subject to seizure is presently located at the place to be searched, so long as "'there is probable cause to believe that it will be there when the search warrant is executed.'"

*Id.* at 413, 613 A.2d 395 (quoting *Garcia,* 882 F.2d at 702 (citation omitted)). We added:

In fact, "it may fairly be said that as a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon known prior location of the item to be seized at the place to be searched."

93 Md.App. at 413–14, 613 A.2d 395 (quoting 2 LaFave, *Search and Seizure* § 3.7(c), at 97 (2d ed. 1987)). Such is the situation, we suggested, when the evidence is "on a 'sure and irreversible course to its destination.'" 93 Md.App. at 414, 613 A.2d 395 (citation omitted).

We acknowledged, in *Lee,* that a judge who failed to require a particularized showing as to the anticipated crime risked "abdicat[ing] to law enforcement agents the essential function of determining whether probable cause exists." *Id.* at 417, 613 A.2d 395. We pointed out, however, that if

a particularized showing [has been made] that the items to be seized will be in the place to be searched at a specified time .... [then] ... the issuing magistrate can foresee with near certainty not only that the crime will come to fruition, but also that it will unfold precisely as set forth in the warrant application.

*Id.* at 416, 613 A.2d 395. We indicated that where such a showing has been made, it is the magistrate and not the officers in the field who "'determine[s] when, and whether, there should be a search.'" *Id.* at 417, 613 A.2d 395 (citation omitted).

While not deciding the issue, we strongly suggested in *Lee* that, under certain circumstances, an anticipatory

search warrant could withstand Fourth Amendment scrutiny. For the reasons set forth in *Lee* and reiterated above, we now hold that anticipatory search warrants do not, as a matter of law, offend the Fourth Amendment. We further conclude that anticipatory search warrants do not, as a matter of law, violate Article 26 of this State's Declaration of Rights. It is well established that Article 26 is *in pari materia* with the Fourth Amendment. *See Givner v. State,* 210 Md. 484, 492, 124 A.2d 764 (1956). We are satisfied, moreover, that the issuing judge in the instant case complied with the mandates of the Fourth Amendment by particularizing the circumstances under which the warrant could be executed. By incorporating by reference into the warrant the affidavit in support of the application for search warrant, the judge ensured that the warrant could not be executed until the triggering event—the controlled delivery of the package of PCP—had occurred.

Appellant points out that § 551(a) provides that a search warrant may issue if there "is probable cause ... to believe that [1] any misdemeanor or felony *is* being committed by any individual or in any building, apartment, premises, place or thing," or that "[2] any property subject to seizure under the criminal laws of the State *is* situated or located on the person of any such individual or in or on any such building, apartment, premises, or thing[.]" (Emphasis added.) In appellant's view, this language makes clear that the evidence to be seized must be present at the place to be searched at the time the warrant is issued.[3]

As the Court of Appeals recently explained:

---

**3.** In support of this argument, appellant directs us to *Peterson v. State,* 281 Md. 309, 313–14, 379 A.2d 164 (1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1528, 55 L.Ed.2d 542 (1978), in which the Court of Appeals stated:

Our concern in determining whether a warrant necessary to the reasonableness of a search and seizure has been issued upon an affidavit supporting probable cause is only with the question " 'whether the affiant had reasonable grounds *at the time of his affidavit and the issuance of the warrant* for the belief that the law was being violated on the premises to be searched[.]' "

"When called upon to construe the meaning of statutory language, our goal is to ascertain and effectuate legislative intent. . . . We first examine the primary source of legislative intent, the words of the statute, giving them their ordinary and natural meaning. . . . If the meaning of the language is unclear or ambiguous, "we must consider 'not the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment,' in our attempt to discern the construction that will best further the legislative objectives or goals. . . ."

*Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347 (1995) (citations omitted). "While penal statutes are strictly construed, the construction given them ultimately depends upon ascertaining the intention of the Legislature when it drafted and enacted the statutes in question." *Id.* at 673, 659 A.2d 1347.

While appellant's interpretation of § 551 appears to be a plausible one, the language could also be read merely to require that probable cause be present at the time the warrant is executed. The language is, at best, ambiguous. Nothing in the legislative history of § 551(a) supports appellant's narrow reading of the statute, and we decline to adopt that reading. In so declining, we point out that, at least so far as the requirement of probable cause for the issuance of a warrant is concerned, § 551(a), like Article 26 of the Declaration of Rights, is *in pari materia* with the Fourth Amendment. *See Andresen v. State,* 24 Md.App. 128, 169, 331 A.2d 78, *cert. denied,* 274 Md. 725 (1975), *aff'd,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (where, in determining whether probable cause was stale, this Court explained that "the Fourth Amendment to the Federal Constitution, on the one hand, and Article 26 of the Maryland Declaration of Rights along with Art. 27, § 551, on the other hand, are provisions *in pari*

---

(Emphasis added.) The *Peterson* Court, however, was not analyzing the language of § 551(a) but was merely addressing whether probable cause that supported a warrant was stale, i.e., whether evidence might have been removed from the premises to be searched before the warrant was issued.

*materia* and protect like rights in a like manner"). *See also In Re Special Investigation No. 228,* 54 Md.App. 149, 176–77, 458 A.2d 820, *cert. denied,* 296 Md. 414 (1983) (explaining that § 551 and the Fourth Amendment "are totally divergent remedies" in that they serve different purposes, but that they "overlap[ ] minimally as they touch probable cause"). *Compare Anne Arundel County v. Chu,* 69 Md.App. 523, 518 A.2d 733 (1987), *aff'd,* 311 Md. 673, 537 A.2d 250 (1988) (observing, in the context of explaining that § 551(a) is not an exclusionary rule, that in many ways § 551(a) is not *in pari materia* with the Fourth Amendment). We thus hold that search warrants, merely because they are anticipatory, do not violate § 551(a) as a matter of law. *Compare People v. Ross,* 267 Ill.App.3d 711, 205 Ill.Dec. 49, 642 N.E.2d 914 (1994), *aff'd,* 168 Ill.2d 347, 213 Ill.Dec. 672, 659 N.E.2d 1319 (1995) (anticipatory search warrant violated state statute permitting warrants to issue for evidence which "may have been used" in the commission of a crime, where legislative history made clear that legislature intended that warrant issue only when the crime had already been committed); *Gerardi v. State,* 307 So.2d 853 (Fla.Dist.Ct.App.1975) (anticipatory search warrant violated state statute—which was later amended—that permitted a warrant to issue for the search of a private dwelling if, *inter alia,* "the law relating to narcotics or drug abuse *is* being violated" (emphasis added)).

Appellant asserts that, even if anticipatory warrants are not invalid as a matter of law, the warrant in the instant case was invalid in that it was not based on probable cause. He reasons that because the package did not bear his address, but was directed to his home only after the police became involved, it was never on a "sure course to a known destination." Appellant further suggests that the warrant failed to establish that Boulton knew what was in the package, and that Lucabaugh gave police Boulton's name in order to "shift the blame."

■ "In determining whether probable cause exists, the issuing judge or magistrate is confined to the averments

contained within the four corners of the search warrant application." *Lee*, 330 Md. at 326, 624 A.2d 492. "Review of the magistrate's decision to issue a search warrant is limited to whether there was a substantial basis for concluding that the evidence sought would be discovered in the place described in the application and its affidavit." *Id.* The affidavit in support of the application for search warrant made clear that police intercepted a package addressed to Joey Labaugh. The package was searched, pursuant to a separate warrant, and was found to contain two bottles of PCP. A controlled delivery was then made to the address printed on the package, and Randal Lucabaugh accepted it. Lucabaugh was subsequently arrested. He reported to police that a portion of the package was to be sent to Roarke Boulton. Significantly, Lucabaugh then made a monitored telephone call to Boulton, who confirmed that he was to receive a portion of the package and agreed to speak with a third person regarding delivery. That third person—an undercover police officer—then telephoned Boulton and Boulton instructed him to deliver the package to appellant's address. A police check confirmed that Boulton was using appellant's telephone when he accepted the calls from Lucabaugh and the undercover officer.

As appellant states, the parties to the telephone calls did not identify the contents of the package. Nevertheless, we are convinced that, based on the affidavit, the issuing judge had a substantial basis for concluding that Boulton knew what was in the package, and that the package was on a sure course to a known destination—appellant's home—even before it was intercepted by police. The risks inherent in anticipatory search warrants, discussed in *Lee*, 93 Md.App. at 416, 613 A.2d 395, are not present here. The court below properly denied appellant's motion to suppress.

## II

### Sufficiency of the Evidence

Appellant next contends that the evidence was insufficient to establish that he possessed PCP. Appellant asserts that

his uncontroverted testimony established that he merely accepted the package on Boulton's behalf, and that he did not know what was inside it. He adds that "there was only ten to 15 seconds from the time the package was opened by Mr. Boulton until the time the police executed the anticipatory search warrant." Appellant concludes that his convictions for possession of PCP with intent to distribute and simple possession of PCP must fall.

Possession is "the exercise of actual or constructive dominion or control over a thing by one or more persons." Md. Ann.Code art. 27, § 277(s) (1957, 1996 Repl.Vol.). "The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988). As this court has explained, some factors to be considered in determining possession are:

1) proximity between the defendant and the contraband; 2) the fact that the contraband was within the plain view or otherwise within the knowledge of the defendant; 3) ownership or some possessory right in the premises or automobile in which the contraband is found; and 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual enjoyment of the contraband

*Rich v. State*, 93 Md.App. 142, 150, 611 A.2d 1034 (1992), *vacated and remanded on other grounds*, 331 Md. 195, 627 A.2d 537 (1993) (citing *Folk v. State*, 11 Md.App. 508, 514, 275 A.2d 184 (1971)).

In reviewing a challenge to the sufficiency of the evidence, "we review the evidence in the light most favorable to the State ... giving due regard to the trial court's findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of the witnesses." *State v. Albrecht*, 336 Md. 475, 478, 649 A.2d 336 (1994) (citations omitted). "It is axiomatic that the weight of

the evidence and the credibility of witnesses are always matters for the jury to determine when it is the trier of facts." *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991).

Despite appellant's suggestion, the jury was not required to accept appellant's testimony that he did not know what was in the package and was not familiar with the smell of PCP. The State presented evidence that, when the police entered appellant's home, appellant and Boulton were both seated on sofas in the living room with the opened package on the coffee table in front of them. One bottle of PCP was still in the package and the other bottle, which emitted a strong odor of PCP, was on the floor between Boulton and the table. Police found three large bottles of parsley flakes, which are used to facilitate the smoking of PCP, in appellant's kitchen. They found three pipes, all of which contained residue of either cocaine or marijuana, in various places in appellant's home. One of these pipes was found in a dresser drawer in appellant's bedroom. " '[A]fter viewing the evidence in the light most favorable to the prosecution,' " we are satisfied that " '*any* rational trier of fact could have found' ... beyond a reasonable doubt" that appellant possessed the PCP. *Albrecht,* 336 Md. at 479, 649 A.2d 336 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis *Jackson* Court's).

## III

### Statement Against Penal Interest

The defense called Roarke Boulton as a witness, but Boulton invoked his Fifth Amendment privilege not to testify. Thereafter, the defense sought to introduce, through a law clerk to appellant's counsel, a pre-trial statement that Boulton made to the clerk and counsel while Boulton was incarcerated at the Howard County Detention Center. Defense counsel posited that the statement was a statement against penal interest.

The court permitted counsel to examine the law clerk out of the jury's presence. The law clerk revealed that, while visit-

ing Boulton with appellant's counsel, Boulton indicated that, just before the arrests,

> he was waiting on a package of tattoo equipment, and that [appellant] had, I think, taken a package and didn't know what was in the package. And Roarke—Roarke was saying that he was expecting tattoo equipment that day, but that [appellant]—he felt bad that [appellant] was in this situation because [appellant] didn't have anything to do with this, this package of tattoo equipment, and that he was—he especially felt bad because [appellant] was the only person willing to take him into his home after Roarke had come out of, I guess, jail.

Defense counsel asserted that that portion of Boulton's statement indicating that appellant "didn't have anything to do" with the package was a statement against penal interest, in that it suggested that Boulton had something to do with it. The trial court disagreed, however, and observed that the statement neither tended to subject Boulton to criminal liability nor appeared to be trustworthy. Appellant now contends that the trial court erred by precluding the admission of the statement.

Pursuant to Md. Rule 5–804(b)(3), statements against penal interest are admissible as exceptions to the hearsay rule if the declarant is unavailable.[4] The rule defines a statement against penal interest as "[a] statement which ... at the time of its making ... so tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." It directs: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." As the Court of Appeals has explained,

---

4. There is no dispute that Boulton made himself unavailable by invoking his Fifth Amendment privilege.

a trial judge considering the admissibility of a hearsay statement offered as a declaration against penal interest must carefully consider the content of the statement in the light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was in fact against the declarant's penal interest and whether a reasonable person in the situation of the declarant would have perceived that it was against his penal interest at the time it was made. The trial judge should then consider whether there are present any other facts or circumstances, including those indicating a motive to falsify on the part of the declarant, that so cut against the presumption of reliability normally attending a declaration against interests that the statements should not be admitted.

*State v. Standifur,* 310 Md. 3, 17, 526 A.2d 955 (1987).

Appellant's assertion that Boulton's statement was somehow inculpatory ignores that Boulton told the law clerk and appellant's counsel that he was expecting a package of tattoo equipment. Boulton merely stated that he "felt bad" because appellant would not be in such a predicament but for some apparent mix-up regarding tattoo equipment. Moreover, Boulton indicated that he felt indebted to appellant because appellant "was the only person willing to take him into his home...." As the trial court explained, none of Boulton's statements were against his penal interest and they could not be considered trustworthy under the circumstances. *State v. Matusky,* 343 Md. 467, 492, 682 A.2d 694 (1996). The court properly precluded the admission of Boulton's statement.

## IV

### Prior Use of Controlled Dangerous Substances

During his direct examination of three witnesses for the defense, defense counsel attempted to question the witnesses as to their knowledge of possible prior drug use by appellant. The trial court sustained the prosecutor's objections to the questioning, and appellant now claims error. Appellant as-

serts that the witnesses would have testified to the effect that, to their knowledge, he was not familiar with illegal drugs. Thus the testimony would have bolstered appellant's own testimony that he was not a drug user and would have countered the State's evidence that appellant constructively possessed the contraband found in his home.

Preliminarily, there is some question as to whether appellant's argument is properly preserved. At no time below did appellant proffer the contents or the relevance of the excluded testimony. *See Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984). Although no such proffer is necessary where "what the examiner is trying to accomplish [is] obvious," it is doubtful that what defense counsel was trying to accomplish was obvious. *Waldron v. State,* 62 Md.App. 686, 698, 491 A.2d 595, *cert. denied,* 304 Md. 97, 497 A.2d 819 (1985).

Assuming, without deciding, that the argument is preserved, we find it to be without merit. In order for evidence to be admissible, it "must be relevant to the issues and must tend either to establish or disprove them." *State v. Joynes,* 314 Md. 113, 119, 549 A.2d 380 (1988) (quoting *Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665 (1976)) (emphasis omitted). A decision on the relevance of evidence is "a matter which is quintessentially within the wide discretion of the trial judge...." *Best v. State,* 79 Md.App. 241, 259, 556 A.2d 701, *cert. denied,* 317 Md. 70, 562 A.2d 718 (1989). "A trial court's determination on relevance will not be reversed by an appellate court absent a clear showing that [the trial court] abused its discretion." *White v. State,* 324 Md. 626, 637, 598 A.2d 187 (1991). The court below apparently believed that the testimony of the three witnesses—appellant's estranged wife, neighbor, and father—as to their knowledge of appellant's prior involvement with illicit drugs was not relevant to the present case. We perceive no abuse of discretion.

## V

### Voir Dire

Prior to trial, defense counsel submitted, in writing, proposed *voir dire* questions to the court. Proposed question

number 15 asked: "Would any member of the jury panel be inclined to give more weight and consideration to the arguments of the Assistant State's Attorney than those of Defense Counsel merely because she is an Assistant State's Attorney and is employed by the State of Maryland?" The trial court did not ask the proposed question when it conducted *voir dire* of the jury and, on appeal, appellant claims error.

In our September 27, 1996 opinion, we concluded that defense counsel had not lodged an objection to the court's failure to ask the proposed question. In so concluding, we overlooked an exchange that took place after the court had asked two supplemental *voir dire* questions and received answers thereto. As appellant points out in his motion for reconsideration, defense counsel did indeed lodge an objection during that exchange.

Although appellant is correct that a proper objection was filed, it does not follow that reversal is warranted. In short, appellant's argument that the trial court erred by refusing to ask proposed question number 15 is patently without merit.

In essence, proposed question 15 sought to uncover whether any prospective juror would give greater weight to the arguments of the assistant State's attorney than to those of defense counsel simply because the assistant State's attorney was employed by the State. The court did ask the prospective jurors if they knew or "had any prior relationships, dealing, contacts, or involvement in any way" with the assistant State's attorney. It further asked the prospective jurors if they had "formed an opinion as to the innocence or guilt of this Defendant, based on the information that's been provided so far." In our view, the questions asked by the trial court tended to uncover any potential bias in favor of the assistant State's attorney's case and rendered proposed question number 15 superfluous. Proposed question number 15, moreover, would have been misleading in that it unduly magnified the importance of the arguments of counsel. The court expressly instructed the jury to base its decision on the evidence. It

**678**

further instructed the jury that the arguments of counsel were not evidence.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.